# UNITED STATES DISTRICT COURT

for the
Western District of Washington

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br>The Google account affordabletax4you@gmail.com,<br>more fully described in Attachment A.</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   MJ20-725</td></tr>
</table>

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7206(2) | Assisting in preparation of tax return with materially false statements |
| 18 U.S.C. § 287 | Submitting false claims |

The application is based on these facts:

✓ See Affidavit of Special Agent Yong Shin, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Yong Shin, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 11/10/2020 _____

_____
*Judge's signature*

City and state:  Seattle, Washington

Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON   )
                      )   ss
COUNTY OF KING        )

I, Yong Shin, being first duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") in Seattle, Washington.  I have been so employed since February 2019.  My official duties and responsibilities include the investigation of alleged criminal violations of the Internal Revenue Code (Title 26, United States Code), the Money Laundering Control Act of 1986 (Title 18, United States Code, Sections 1956 and 1957), the Bank Secrecy Act (Title 31, United States Code), and other related offenses.

2.      I received a Bachelor of Science degree in Business Administration from California State University, Fullerton, in 2010, with an emphasis in accounting. Prior to becoming a Special Agent, I worked for the Internal Revenue Service as a Revenue Agent for approximately eight years. As a Revenue Agent, I examined numerous individual and business income tax returns, interviewed and educated tax return preparers, and received annual tax related trainings. I am also a Certified Public Accountant licensed in the state of California.

3.      I have successfully completed approximately 26 weeks of basic training at the Federal Law Enforcement Training Center in Glynco, Georgia.  My training included courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants.  I have received extensive training in accounting and financial investigative techniques relating to criminal violations of the Internal Revenue Code and related offenses. In the course of my employment with IRS-CI, I have participated in the execution of several search warrants involving criminal tax and related offenses.

4.      I make this affidavit in support of an application for a search warrant for information associated with the **affordabletax4you@gmail.com** email account  that is stored at premises controlled by Google, LLC ("Google"), a provider of electronic communication and remote computing services, headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

5.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 26, United States Code Section 7206(2), assisting in the preparation of a return with a materially false statement, and violations of Title 18, United States Code Section 287, submitting false claims, have been committed by Abinet Onkiso.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

Affidavit of Special Agent Yong Shin - 2
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF THE INVESTIGATION

7.      This affidavit describes the results of an investigation conducted by IRS-CI regarding the alleged criminal activity of Abinet Onkiso ("Onkiso") in violation of Title 26, United States Code Section 7206(2) and Title 18, United States Code Section 287.  This investigation was initiated from a referral from the IRS Scheme Detection Center ("SDC") in Ogden, Utah, which is responsible for monitoring income tax returns for unusual activity. Analysts assigned to the SDC locate suspicious groups of returns and use databases and other tools in order to develop investigations which are then assigned to special agents in the appropriate field office for review. Onkiso was identified using the Return Preparer Analysis Tool database and flagged for suspicious activity.  The case was then assigned to the Seattle Field Office.

8.      As set forth below, Onkiso prepares tax returns for others in exchange for a fee.  He prepares returns out of his business located at 3250 Airport Way S Ste 223, Seattle, WA 98134, a public library, or his own home. The return preparation business is registered as Affordable Income Tax and Immigration Services, LLC ("AIT").

9.      The investigation of Onkiso, doing business as the owner of AIT, shows that Onkiso, through his tax preparation business, prepared false individual income tax returns, on a Form 1040, for his clients for the tax years 2014 through 2019. Onkiso prepared and electronically filed tax returns on behalf of his clients that contained inflated unreimbursed employee business expenses ("UEBE"), cash charitable contributions and/or other taxes to reduce his client's taxable income, thereby decreasing their tax liability and/or increasing the amount of their refunds.

## Information from Scheme Development Center

10.     The SDC identified returns prepared by Onkiso using his preparer tax identification number [PTIN] assigned to Onkiso. A PTIN is a unique identification number assigned by the IRS to each paid tax return preparer.

Affidavit of Special Agent Yong Shin - 3
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     The table below summarizes the returns prepared and transmitted to the Internal Revenue Service by Onkiso for the years 2014 through 2017 (processing years 2015 – 2018):

| Returns Filed by Abinet Onkiso | | | | | |
|---|---|---|---|---|---|
| Tax Year | Total Returns Prepared | Refund Returns | Refunds Claimed | Number of Schedule A Returns | Percentage of Schedule A Returns |
| 2017 | 851 | 752 (88%) | $2,330,026 | 385 | 45% |
| 2016 | 570 | 507 (88%) | $1,513,294 | 202 | 35% |
| 2015 | 387 | 348 (89%) | $984,112 | 81 | 20% |
| 2014 | 245 | 232 (94%) | $671,041 | 35 | 14% |
| Totals | 2053 | 1839 (89%) | $5,498,473 | 703 | 34% |

As shown in the table above, an analysis conducted by the SDC of the total returns prepared by Onkiso for the tax years 2014 through 2017 shows that 89% of all returns filed by Onkiso claimed refunds.  In comparison, 79.62% of all returns filed nationwide for the tax years 2014 through 2016 claimed refunds. The table also shows that the percentage of returns that included a Schedule A increased from 14% of total returns in 2014, to 45% of total returns in 2017. The national average for tax returns containing Schedule A deductions has been close to 30%.

12.     The SDC conducted a review on 703 returns with Schedule A's prepared by Onkiso for the tax years 2014 through 2017. Of the 703 returns, 89% claimed cash contribution deductions, and 95% claimed UEBE deductions. In addition, the SDC identified returns which contained unallowable expenses listed as UEBE such as funeral expenses, loans to an individual, church donations, home renovations, home office expenses, community contributions, and medical expenses.

Affidavit of Special Agent Yong Shin - 4
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Analysis of Returns Prepared by Abinet Onkiso for Tax Years 2015-2019

13.     Using IRS databases, the tax returns filed using the PTIN assigned to Onkiso were identified to conduct additional analysis.  The table below summarizes the findings as they relate to specific characteristics of returns filed by Onkiso from years 2016 through 2020 (tax years 2015 through 2019) which included Schedule A UEBE, cash contributions and taxes paid:

| Returns Filed by Abinet Onkiso- Schedule A Statistics | | | | | |
|---|---|---|---|---|---|
| Process Year | 2016 | 2017 | 2018 | 2019 | 2020 |
| % of Returns w/ Sch A UEBE | 19.33% | 35.15% | 44.11% | 0.24% | 0.00% |
| Average Sch A UEBE | $ 7,371.52 | $ 7,528.63 | $ 9,826.11 | $ 2,679.00 | $        - |
| % of Returns w/Sch A Cash Contributions | 18.04% | 33.22% | 41.22% | 23.34% | 26.25% |
| Average Sch A Cash Contributions | $ 4,508.87 | $ 5,734.32 | $ 5,467.57 | $ 11,313.33 | $ 10,266.34 |
| % of Returns w/ Sch A Other Taxes | 13.92% | 26.54% | 9.35% | 20.76% | 26.78% |
| Average Sch A Other Taxes | $ 969.37 | $ 375.50 | $ 457.53 | $ 7,619.88 | $ 8,142.19 |

14.     As shown in the table above, an analysis of the returns prepared by Onkiso identified large Schedule A UEBE deductions on the returns filed in years 2016 through 2018. Only two returns filed in 2019 (late filed 2016 and 2017 tax returns) show UEBE deduction as the line item has been removed by the Tax Cuts and Jobs Act of 2017. The table further shows that Onkiso substantially increased Schedule A cash contributions and Schedule A other taxes deductions in years 2019 and 2020 when he was not allowed claim UEBE deductions on his client's tax returns.

15.     Onkiso's Schedule A statistics from the table above were compared to the statistics for all Forms 1040 filed in the western zip codes of Washington (zip codes 98000-98599). The table below illustrates that the percentages of the returns filed by Onkiso with Schedule A UEBE, cash contributions and other taxes deductions were significantly higher than the percentages of all returns filed in Western Washington with same deductions.

Affidavit of Special Agent Yong Shin - 5
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Comparison of Returns Filed by Onkiso to All Western WA Returns | | | | | |
|---|---|---|---|---|---|
| Process Year | 2016 | 2017 | 2018 | 2019 | 2020 |
| % of Returns w/ UEBE- **Filed by Onkiso** | 19.33% | 35.15% | 44.11% | | |
| % of Returns w/ UEBE- **Western WA** | 8.72% | 8.62% | 8.45% | | |
| % of Returns w/ Cash Contributions- **Filed by Onkiso** | 18.04% | 33.22% | 41.22% | 23.34% | 26.25% |
| % of Returns w/ Cash Contributions- **Western WA** | 22.04% | 22.09% | 22.20% | 10.50% | 8.74% |
| % of Returns w/ Other Taxes- **Filed by Onkiso** | 13.92% | 26.54% | 9.35% | 20.76% | 26.78% |
| % of Returns w/ Other Taxes- **Western WA** | 2.58% | 2.47% | 2.48% | 0.87% | 0.68% |

Additionally, the percentages of the returns filed in Western Washington with other taxes deductions were reduced by more than 50% after changes were made by the Tax Cuts and Jobs Act of 2017. Because the new tax law nearly doubled the standard deduction amount, and with changes made on the itemized deductions including removal of UEBE, more taxpayers took the standard deduction instead of itemizing deductions. On the contrary, the percentages of the returns filed by Onkiso with other taxes deductions increased significantly. This pattern indicates that Onkiso took more aggressive deductions as some clients who previously itemized deductions could no longer itemize after the tax law changes.

16.     A review of the tax returns filed in years 2019 and 2020 (tax years 2018 and 2019) with large Schedule A other taxes deductions identified that Onkiso deducted UEBE, the deduction which most taxpayers were not allowed to deduct on their 2018 and 2019 tax returns, as Schedule A other taxes.

17.     Based on my training and experience, the information provided by the Ogden SDC and additional research of IRS databases, I believe Onkiso is aiding and assisting in the preparation of false returns for clients by utilizing fraudulent itemized deductions, resulting in false claims for refunds.

## **Undercover Operation**

18.     On March 13, 2019, an undercover agent ("UCA") met with Onkiso and asked him to prepare his/her personal income tax return for 2018.  The meeting took place at the

business location of AIT at 3250 Airport Way S Ste 223, Seattle, WA 98134.  The UCA used an undercover audio recording device and a video recording device to record the meeting.  I have listened to the audio recording and have discussed the meeting with agents who participated in the UC operation.

19.     The UCA met with Onkiso in his office and observed a desk in the center of the office and another desk by the right wall. Onkiso sat at the center desk and had his laptop on the desk. The UCA observed a desktop computer on the desk by the right wall.  The UCA also observed several tax certifications and a master's degree certificate hung up on the wall behind Onkiso's desk.

20.     The UCA provided Onkiso his/her 2018 Form W-2 which should have yielded an amount due of $173 if correctly filed. Onkiso entered the UCA's tax information into his laptop computer and told the UCA that he/she owed approximately $173 because the UCA's withholdings were insufficient. Onkiso then proceeded to ask the UCA about various expense items which the UCA denied spending money for. The UCA told Onkiso that he/she donated $10 every Sunday to his/her church and spent about $30 to renew his/her license. The UCA left the office entirely for a moment and when he/she returned, Onkiso had worked on the UCA's tax return and calculated a tax refund of $1,315. On the UCA's tax return, Onkiso had added Schedule A other taxes of $10,020, personal property taxes of $2,506 and cash contributions of $10,770.  Neither the documents provided by the UCA nor the UCA's answers to Onkiso's questions provided a basis or justification for those Schedule A deductions.

21.     Onkiso gave the UCA a copy of the prepared tax return with his signatures on the Form 8879, IRS e-file Signature Authorization, and the first page of the Form 1040. Onkiso typed in "Abinet Onkso" as the preparer on the UCA's Form 1040. A cover page provided with the return listed AIT's email address as **affordabletax4you@gmail.com**.

22.     When the UCA asked Onkiso how much the tax preparation fee was, he/she was told to pay $100.00. The UCA paid Onkiso $100.00 and asked for a receipt. However, Onkiso told the UCA that a receipt was not available.

Affidavit of Special Agent Yong Shin - 7
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.     The copy of the UCA's return shows that Onkiso added Schedule A other taxes of $10,020 with a note "See STM 01". The referenced statement was not attached to the copy provided to the UCA and the items deducted as other taxes were not explained to the UCA.  I reviewed the electronic return filed to the IRS and identified the items deducted as Schedule A other taxes. The items deducted as other taxes include $70 for a vehicle license, $1,250 for union dues, $1,580 for uniform expenses, $3,560 for "CE" and $3,560 for meals.  Again, the UCA had provided no information that would have justified the inclusion of any of these expenses.

### Interview with Abinet Onkiso

24.     On September 10, 2020, I interviewed Mr. Onkiso at his residence located at 10119 28th Dr SE, Everett, WA 98208. Onkiso was read his non-custodial rights as they appear on Document 5661, and he agreed to proceed with the interview. During the interview, Onkiso stated that he communicated with his clients via email and fax, and he has been using his business email account **affordabletax4you@gmail.com** for approximately five years to send and receive tax related information and documents with his clients.

25.     Onkiso stated that he holds three master's degrees, including two degrees in economics from U.S. and Ethiopia, and a degree in public policy from Netherlands. Onkiso is currently working towards a PhD in international development at University of Southern Mississippi. Onkiso stated that he received trainings from Liberty Tax and read books about taxes to become a tax preparer. Onkiso obtained his return preparer license and PTIN in 2012 and started his return preparation business in 2012. Onkiso also became a certifying agent in 2018 and attended annual tax trainings provided by software providers and the IRS.

26.     Onkiso stated that he e-filed most of his clients' tax returns and signed on all Forms 8879, IRS e-file Signature Authorizations. Onkiso also asked his clients to sign the forms electronically and provided copies of signed Forms 1040 and Forms 8879 to his clients.

27.     Onkiso stated that he has a good understanding of Form 1040 and its schedules including Schedule A and Schedule C. He is aware of the changes made on Form 1040 by

Affidavit of Special Agent Yong Shin - 8
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Tax Cuts and Jobs Act of 2017, and further stated that several changes were made on Schedule A including removal of use of home deduction and work-related expense deductions. Onkiso had a good understanding of UEBE and expenses that can be deducted under UEBE.

28.     Onkiso initially stated that he determined allowable deductions based on the documents provided by his clients and verified the numbers line by line with his clients. He insisted that he never increased Schedule A deductions without asking and confirming those deductions with his clients, and further stated that he did not deduct UEBE under Schedule A other taxes after the tax law changes in 2018. When he was told that the undercover operation was conducted on March 13, 2019 and that he increased Schedule A deductions on the UCA's return without confirming with the UCA, Onkiso then admitted that he was deducting work-related expenses under UEBE prior to 2018, but started to deduct them under Schedule A other taxes in some occasions. Onkiso stated that he deducted work-related expenses under other taxes because he faced a lot of pressure from his clients as they expected higher refunds.

## PAST EFFORTS TO OBTAIN THIS EVIDENCE

29.     This evidence has not been previously available to me or other agents.  On August 26, 2020, I sent a preservation letter to Google,  requesting that they preserve all evidence related to the account, **affordabletax4you@gmail.com**, under authority of Title 18, United States Code, Section 2703(f)(1), for a period of 90 days.

30.     On September 17, 2020, Onkiso signed a voluntary consent form to authorize the image and search of his computer, and a computer specialist took a forensic image of the computer provided by Onkiso. The analysis of the image revealed a capture of one email that was sent to Onkiso from his client with a list of deductible expenses. In the email, the client stated that she spent $1,500 for donations. On the client's 2019 tax return prepared by Onkiso, a deduction of $5,850 was taken as Schedule A cash contributions. Other personal and business expenses stated in the email, including $1,500 for education expenses, $5,051.04 for car payments and $1,000 work related expenses, were reported as Schedule A

Affidavit of Special Agent Yong Shin - 9
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   other taxes.  In my experience, even if these expenses were legitimate, they would not be

2   reported under Schedule A as "other taxes."  Other than the email identified above, Onkiso

3   did not save emails related to the **affordabletax4you@gmail.com** account to the folder

4   which consent to image was given.

5          31.    Scanned tax returns prepared by Onkiso for the tax years 2015 through 2019

6   were identified from the image. The 2016-2019 tax returns had cover pages which listed

7   AIT's email address as **affordabletax4you@gmail.com**.

8   ### BACKGROUND REGARDING GOOGLE'S SERVICES

9          32.    In my training and experience, I have learned that Google provides a variety of

10  on-line services, including electronic mail ("e-mail") access, document storage, calendars,

11  video and photograph sharing and storage, and web browsers to the general public.  Google

12  allows subscribers to obtain e-mail accounts at the domain name gmail.com, like the e-mail

13  account listed in Attachment A.

14         33.    Subscribers obtain an account by registering with Google**.**  When doing so,

15  Google asks the subscriber to provide certain personal identifying information.  This

16  information can include the subscriber's full name, physical address, telephone numbers and

17  other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source

18  of payment (including any credit or bank account number).  In my training and experience,

19  such information may constitute evidence of the crimes under investigation because the

20  information can be used to identify the account's user or users, and to help establish who has

21  dominion and control over the account.  Indeed, even if the content of emails in an account

22  has been deleted, subscriber information may still be important evidence that would be

23  useful to identify the account's user or users.

24         34.    E-mail providers typically retain certain transactional information about the

25  creation and use of each account on their systems.  This information can include the date on

26  which the account was created, the length of service, records of log-in (i.e., session) times

27  and durations, the types of service utilized, the status of the account (including whether the

28  account is inactive or closed), the methods used to connect to the account (such as logging

Affidavit of Special Agent Yong Shin - 10
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

into the account via Google's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account, which can help establish the individual or individuals who had dominion and control over the account

35.     In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Gmail's servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on Gmail's servers indefinitely.  Even if the subscriber deletes the e-mail, it may continue to be available on Gmail's servers for a certain period of time.

36.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Gmail's servers, and then transmitted to its end destination. Google often maintains a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the Gmail server, the e-mail can remain on the system indefinitely.  Even if the sender deletes the e-mail, it may continue to be available on Gmail's servers for a certain period of time.

37.     A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail.  If an e-mail user writes a draft message but does not send it, that message may also be saved by Google but may not include all of these categories of data.

38.     Furthermore, a subscriber's history that relates to web browsing, web searches, and certain activity related to Google services or applications are stored in an account's Google History, or Google Web and Applications Activity.

39.     A subscriber can also sign up for other services at Google, such as Google Drive and Google Docs, which allow subscribers to store any kind of documents.

Affidavit of Special Agent Yong Shin - 11
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

40.     Information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, this enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contact lists, images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicated the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement), and the knowing involvement of other participants in the scheme.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41.     Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Google, and its agents and employees, to assist agents in the execution of this warrant.  Once issued, the search warrant

Affidavit of Special Agent Yong Shin - 12
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

will be presented to Google with direction that it identify the Google account described in Attachment A to this affidavit, as well as other subscriber and log records associated with the accounts, as set forth in Section I of Attachment B to this affidavit.

42.     The search warrant will direct Google to create an exact copy of the specified account and records.

43.     I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

44.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software.  It could also be very time-consuming.  Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  Keywords used originally need to be modified continuously, based on interim results.  Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common e-mail, database and spreadsheet applications do not store data as searchable text. The data may be saved, instead, in proprietary non-text format.  And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well.   Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.  All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

45.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of e-mail communications, chat logs and documents, that identify any users of the subject account and e-mails sent or received in temporal proximity to incriminating e-mails that provide context to the incriminating communications.

Affidavit of Special Agent Yong Shin - 13
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

46.     Based on the foregoing, I request that the Court issue the proposed search warrant.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  Accordingly, by this Affidavit and Warrant I seek authority for the government to search all of the items specified in Section I, Attachment B (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment.


_____

Yong Shin, Affiant
Special Agent
IRS, Criminal Investigation

SUBSCRIBED and SWORN to before me this __10th__ day of November, 2020.


_____

MARY ALICE THEILER
United States Magistrate Judge

Affidavit of Special Agent Yong Shin - 14
USAO# 2020R01048

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>ATTACHMENT A</u>

### Account to be Searched

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with Google account:

**affordabletax4you@gmail.com**

as well as all other subscriber and log records associated with the account, which are located at premises owned, maintained, controlled or operated by Google, LLC, an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B

**I.   Section I - Information to be disclosed by Google, for search:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, including any e-mails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 26, 2020 Google is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All calendars, including shared calendars and the identities of those with whom they are shared, calendar entries, notes, alerts, invites, and invitees;

d.      All records (including content records and the stored application data) associated with the account pertaining to any Google services associated with the account, including services such as Gmail, Google Calendar, Google Docs, Google Drive, Google Talk, Google Reader, Google Voice, and Web History and Search History;

e.      All other records of communications and messages of any kinds made or received by the user, including all private messages, history of any kind of messages or communications;

f. The types of service utilized;

g. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

**II. Section II - Information to be seized by the government**

All information described above in Section I constituting fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 287 and 26 U.S.C. § 7206(2), those violations occurring January 1, 2014 to present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Any communication between Abinet Onkiso and his tax clients;

b. Any communication between Abinet Onkiso and the Internal Revenue Service;

c. Any communication or information relating to Affordable Income Tax and Immigration Services and its operation

d. Any communication or information establishing knowledge of accounting principles or tax preparation

e. All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account;

f. All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number;

g. Any and all other log records, including IP address captures, associated with the specified account;

h.      Any records of communications between Google and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications